Johnson, C. J. The first objection urged by the plaintiff in error is that permission was given the defendant to read the deposition of Joseph 0. Ashley to the jury. The gist of the objection is that he was not legally served with notice oí the intention of the defendant to take the deposition. The notice appears to have been regularly served by the sheriff of Pulaski county upon Daniel Ringo, one of the firm of Trapnall and Ringo. Ringo himself testified that Trapnall and Cocke were the attorneys of record of the plaintiff; that they had dissolved partnership in the practice of law prior to the execution of the notice, and that before the service of the notice, Trapnall, one of the members of the late firm of Trap-nall & Cocke, who were the attorneys of record of the plaintiff, had associated with him in the practice of law Daniel Ringo, meaning himself, and that at the date of said service said Trapnall & Ringo were practicing law in co-partnership; that at the time said motion purports to have been executed Trapnall was absent from the county of Pulaski; that he himself saw a copy of the notice supposed to have been left by the sheriff on the table where such notices are usually placed in their law office, on or about the day it purported to have been served on him and that he read it; that at that time he had never been spoken to or employed by the plaintiff to attend to the case, that his retainer by him was after that time; but that in,the absence of Trapnall and Cocke he would, from his connexion in business with Trapnall, have appeared in the case without any retainer. Upon this state of facts the plaintiff in error moved the court to exclude the deposition of Ashley, which motion was overruled. The stat--ute requires the notice to be served on the adverse party or his attorney of record in the cause. The inference that naturally and necessarily results from the testimony of Ringo is that the partnership between Trapnall and himself did not relate back so as to embrace the business already in the hands of Trapnall and Cocke,-but that its operation was only prospective, and that consequently he was not one of the attorneys of record at the time of the service of the notice. This seems to be the only legitimate construction of his testimony and as such we think the service upon Ringo was not sufficient to bind Johnston the defendant below.- The court therefore erred in permitting the deposition to be read to the jury. The testimony of Ashley excluded, the question then arises whether there is sufficient without it to justify and support the verdict. The plaintiff below then introduced John Anderson as a witness, who testified as to the appearance of the negro subsequent to the purchase; to the introduction of which testimony the defendant excepted at the time. The testimony of Henderson, though by no means conclusive, was yet clearly relevant, as it might furnish the ground of a fair presumption in support of the issue. It was therefore admissible and properly went to the jury. The plaintiff then introduced David J. Baldwin, Doctor R. A. Watkins, Jesse B. Badgett, William P. Ashley, and Doctor William Wj Adams, each of whom testified as to the appearance of the negro subsequent to the purchase; to all of which testimony the defendant objected and moved the court to exclude the whole. It is the duty of a party who desires to have testimony offered by his advert sary excluded from the jury, to move to that effect so soon as it is delivered, and if he fails to do so, but rests till other witnesses are examined and then moves to exclude the whole, his motion will not be sustained in case any part of the testimony thus delivered shall be competent under the issue joined between the parties.' That most, if not all the testimony thus objected to was competent; we think cannot be doubted, and as such the court decided correctly in overruling the motion. The defendant then introduced a number of witnesses and amongst others L. R. Goodrich, who testified that in the spring of 1841 he was passing in the street of Little Rock at a place where plaintiff- and defendant were engaged in conversation, that defendant called him and that he went to them;- that defendant, in presence of the plaintiff, directed him to pay the plaintiff eight hundred dollars for him for the negro in question; that something was said about one hundred dollars for the hire of the negro; that the plaintiff said he did not consider it a lawful tender in the street, and walked off in the direction of witness’ store in company of the defendant and witness; that he, witness,- told the plaintiff that he would give him the money if he would come into his store, but that when they came to his store plaintiff did not go in but walked' on and that he and the defendant went in. tie stated also that he had money of the defendant at the time in his iron safe at his store to a much larger amount than eight hundred dollars, out of which he would have paid the plaintiff if he would have received it. To this testimony the plaintiff objected and moved the court to'exclude it from the jury, which motion was sustained and exceptions filed. That the circuit court ruled correctly in thus excluding the testimony is perfectly manifest. It did not prove nor did it tend in the remotest manner to establish the issue formed between the parties.- Nothing was said during the entire conversation alluded to in relation to the soundness or unsoundnes of the negro in controversy; consequently it was properly rejected. This testimony excluded, the question then must turn upon the relative weight of the testimony. The bill of exceptions exhibits competent evidence on both sides, and the preponderance is not sufficiently strong against the verdict to require this court to disturb it. After the conclusion of the testimony on both sides, the plaintiff moved the court for sundry instructions, all of which were given to the jury, to which the defendant excepted. We can perceive no valid objection to any except the fourth instruction. In this the court was asked to instruct the jury that in weighing the testimony, when witnesses speak positively as to the lameness or unsoundness and others speak negatively, that there was no unsoundness or lameness that they knew of or perceived, that the jury are bound by the rules of evidence to believe the positive testimony unless the witnesses who testify as to the lameness or unsoundness are unworthy of credit. This instruction asserts a mere abstract principle as the witnesses of both parties seem to have enjoyed equal opportunities of discovering any unsoundness if it existed at the time. For this reason the instruction should not have been given. The defendant then asked the court to instruct the jury: first, that unless they should believe from the testimony that the slave mentioned in the declaration was unsound at the time of the sale and delivery to the plaintiff, they were bound to find for the defendant; and secondly, that if the jury should believe from the testimony that, the/slave mentioned in the declaration was in any manner unsound at the time of the sale and delivery to the plaintiff, that the measure of damages is the amount of injury suffered or diminution of his value occasioned by his then existing infirmity and that the plaintiff is not in law entitled to damages on account of any other infirmity with which he may have thereafter been afflicted. Both of these instructions were properly refused, as they referred to a time anterior to the execution of the bill of sale, and consequently were wholly foreign to the issue. Though the court ruled correctly in refusing these instructions, yet there are other errors for which the judgment must be reversed. Judgment reversed.